STATE OF WEST VIRGINIA

*In re*: A.G.

FILED

**October 23, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**No. 17-0475** (Webster County 16-JA-105)

## MEMORANDUM DECISION

Petitioner Mother A.W., by counsel Andrew Boling Chattin, appeals the Circuit Court of Webster County's April 20, 2017, order terminating her parental rights to A.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary Beth Snead, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period and in ruling that she could not correct the conditions of abuse.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2016, in a prior abuse and neglect proceeding, petitioner was adjudicated as an abusing parent for abusing controlled substances, including smoking Roxicodone, and for failing to provide a fit and suitable home for A.G. According to the record, petitioner permitted her boyfriend, S.C., a convicted felon and drug abuser whose parental rights were previously terminated to at least three other children, to live in the home with A.G., while S.C. was using controlled substances. The circuit court granted petitioner an improvement period in that case, which required that she have no contact with S.C. Petitioner successfully completed that improvement period and was granted joint custody of A.G. around June of 2016. The petition in that matter was ultimately dismissed.

In the current proceedings, the DHHR filed an abuse and neglect petition against petitioner in December of 2016 alleging that police were called to S.C.'s home to investigate a

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

referral that petitioner was abusing controlled substances while A.G. was in her custody. The referral also alleged that petitioner allowed A.G. to be in S.C.'s presence. Petitioner was present when the police arrived and appeared to be under the influence of controlled substances. Petitioner confessed to smoking methamphetamine on December 10, 2016, and later tested positive for the substance. Petitioner told authorities that A.G. had been staying with the father since that date and that she was uncertain whether she abused controlled substances before or after her daughter left her custody. However, A.G.'s father, D.G., told authorities that A.G. did not come to stay with him until December 13, 2016. The DHHR alleged that petitioner denied dating S.C. and stated that they were "best friends." Petitioner denied that A.G. had ever been in S.C.'s presence, but stated that he was a "good person" and "good with kids" and that she thought it wrong that the court had denied her contact with him. The DHHR further noted that S.C.'s mother stated that petitioner and S.C. had been dating and that A.G. had been to his home on at least one occasion.

In February of 2017, the circuit court held an adjudicatory hearing, during which the DHHR presented witnesses who testified that petitioner continued to abuse controlled substances and allowed the child to be in S.C.'s presence. Ultimately, the circuit court adjudicated petitioner as an abusing parent.[2] The circuit court ordered petitioner to have no contact with S.C. and to seek enrollment in a drug rehabilitation program.

In March of 2017, the circuit court held a dispositional hearing, during which petitioner requested an improvement period. The circuit court heard the testimony of multiple witnesses, including petitioner, who testified that she had been accepted into Lifehouse, an inpatient program in Huntington, West Virginia, which lasts a minimum of eight months. Petitioner testified that she checked into the program on February 27, 2017, but left approximately five hours later because she "felt misplaced[,] like [she] didn't belong there" and needed to leave. Petitioner testified that she began to attend Celebrate Recovery, a weekly meeting where participants discuss issues such as anxiety, depression, alcoholism, and substance abuse. Petitioner denied having a drug problem and stated that she attended Celebrate Recovery's weekly meetings to address her anxiety and depression. Contrary to her statement to law enforcement and her failed drug screen, petitioner stated that she last used controlled substances in November of 2016. Petitioner also attempted to contact other rehabilitation programs via phone calls or social media. However, petitioner admitted that she did not submit any paperwork showing her efforts prior to the hearing, nor did she inform anyone with Child Protective Services ("CPS") or the DHHR.

The circuit court then heard testimony from petitioner's parenting class instructor, who testified that she was driving through Craigsville, West Virginia, when she observed what she

---

[2]While the parties refer to petitioner as "an abusive and neglectful parent," we note that the phrase "neglectful parent" does not appear in the statutory framework for abuse and neglect proceedings in this State. Instead, West Virginia Code § 49-1-201 defines "abusing parent" as "a parent . . . whose conduct has been adjudicated by the court to constitute child abuse *or neglect* as alleged in the petition charging child abuse *or neglect*." (Emphasis added.) As such, the Court will refer to petitioner as an "abusing parent" in this memorandum decision, as that phrase encompasses parents who have been adjudicated of abuse and/or neglect.

thought to be petitioner and S.C. in a parking lot. The instructor pulled off the road to be certain and took pictures, which she sent to CPS. The instructor testified that the pictures were blurry and she was not absolutely certain that it was petitioner; petitioner denied the allegations. Further, the circuit court admitted two letters petitioner wrote to the court in early March in which she stated that S.C. was her "biggest problem." When asked about the letters, petitioner responded that she meant he was a problem in December when the case was filed. After hearing the testimony, the circuit court held that there was clear and convincing evidence that petitioner failed to abide by its orders. The circuit court noted that it had previously given her second chances in both this case and her prior case. The circuit court found that witness testimony suggested that petitioner had been in contact with S.C. when ordered not to do so. Ultimately, the circuit court found that there was no reason to believe that petitioner would accept responsibility and address the problems that gave rise to the petition. As there was no reasonable likelihood to believe that petitioner would correct the circumstances of abuse in the near future, the circuit court denied her motion for a post-adjudicatory improvement period and terminated her parental rights.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner's sole assignment of error is that the circuit court erred in terminating her parental rights without first granting her an improvement period and in ruling that she could not correct the conditions of abuse and neglect. First, the Court finds no error in the circuit court's decision to deny petitioner an improvement period. We have previously held that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (holding that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 82, 479 S.E.2d 589, 592 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within

---

[3]Upon the termination of petitioner's parental rights, the child was placed in the custody of the non-abusing father with a permanency plan to remain there.

the applicable statutory requirements").We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period . . . .'" *In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

In this case, petitioner failed to show that she was likely to successfully complete an improvement period. The DHHR provided evidence that, subsequent to completing her improvement period in her first abuse and neglect case, petitioner was found in the presence of S.C. against court order and was under the influence of controlled substances. Petitioner was again given the opportunity to correct her behavior. However, after attempting to begin an inpatient drug rehabilitation program, petitioner left hours later, stating that she felt like she did not belong there. Further, petitioner failed to acknowledge her issues, as shown by her testimony at the dispositional hearing wherein she stated that she did not have a drug problem. Finally, witness testimony suggested that petitioner continued to have contact with S.C., who presented a danger to her child, in violation of the circuit court's order. As such, it was within the circuit court's discretion to deny her an improvement period.

Second, the Court finds no error in the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child . . . .

Based upon the evidence outlined above, it is clear that termination of petitioner's parental rights was warranted. In addition to finding that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect, the circuit court found that termination of petitioner's parental rights was necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon such findings.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 20, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: October 23, 2017

4

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker